UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MARTHALEA DAWN DOLSON,

                              **Plaintiff,**                        **18-CV-07466 (SN)**

                -against-                        **OPINION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                              **Defendant.**
-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      Pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Plaintiff Marthalea Dawn Dolson seeks judicial review of a final decision by the Social Security Administration ("SSA") that she is not entitled to Supplemental Security Income ("SSI"). ECF No. 25. The Commissioner of Social Security (the "Commissioner") cross moves for judgment on the pleadings, ECF No. 29, which the Plaintiff opposed, ECF No. 31 ("Pl.'s Reply"). Because the decision of the Administrative Law Judge ("ALJ") is based on legal error and not supported by substantial evidence, Plaintiff's motion is GRANTED. Accordingly, the Commissioner's cross-motion is DENIED.

**I.    Background**

     **A.    Procedural History**

      Plaintiff applied for Supplemental Security Income ("SSI") benefits on April 15, 2014. The SSA denied her application, and Dolson requested a hearing before an ALJ. On June 3, 2016, Dolson appeared before ALJ Robert Gonzalez. Plaintiff testified at the hearing, as did vocational expert ("VE") Esperanza Distefeno. The Appeals Council denied review of the ALJ's

1

decision on June 20, 2018, making the ALJ's denial of benefits final. On August 16, 2018, Plaintiff filed this action.

      **B.**      **Plaintiff's Early Life and Work History**

Plaintiff was born in 1978 and was 38 years old when the ALJ rendered his decision in July 2017. See Administrative Record ("Tr.") 32. As a student, she was enrolled in special education classes and finished her highest grade, 10th grade, in 1995. Tr. 70, 85. Plaintiff tried to take the high school equivalency test but "could not do the work." Tr. 70-71. She has limited English literacy and needed assistance completing her social security forms. Tr. 91-92. She testified that she never had a bank account or checking account and would not be able to manage social security benefits without help. Tr. 93.

From 2004-2009, Plaintiff held numerous low skill jobs, none lasting as long as a year. See Tr. 73-75, 86-88. She quit each of these jobs because she was unable to successfully carry out the work or was unable to work well with others. Id. She last worked in 2009. Tr. 75. She lives in a room in a private home. Social Services pays her rent. Tr. 71-72. Her landlord dispenses her daily medication for her. Tr. 94-95. Her sister helps her with domestic chores. Tr. 72. She does not drive because she failed the permit test three times. Id.

      **C.**      **Medical Evidence**

Plaintiff alleged chronic back pain, which prevented her from sitting or standing for extended periods of time. She uses a cane or a walker to stabilize herself. Tr. 88. She suffers from several mental health diagnoses.

Plaintiff treats regularly with multiple medical providers. Since at least 2013, Plaintiff treated with orthopedists because of right knee pain. See Tr. 316-19, 523-26. Her primary care physician is Dr. Gapay whom she has seen consistently since 2009 and sees every two to five

months. Tr. 88-89. She also sees Dr. Dunkelman for pain management on a monthly basis since September 2013. Tr. 79. 431-58, 1063-65. In addition, since January 2013, Plaintiff received regular mental health treatment from Licensed Clinical Social Worker Heather Fitzharris, LCSW Taniesha Lewis, and Dr. Lalitha Chandrasekhara. See Tr. 831, 841, 847, 867-882, 891, 898-902, 920-22, 1001, 1046-47.

Dr. Gapay completed at least nine physical assessments, including one in which he concluded that Plaintiff was "currently not capable of participating in work activities at this time." See Tr. 550, 552, 557, 563, 830, 1055, 1057, 1059, 1220. The expected duration of this inability was between "12 months" and forever. Dr. Gapay found that Plaintiff could not lift less than 10 pounds and therefore she was limited to "less than sedentary" work. In two assessments, he concluded that she was "permanently disabled." Tr. 556-57, 829-30.

Dr. Gapay also completed two medical source statements, concluding that she was unable to perform sedentary work. Dr. Gapay found that Plaintiff could sit for no more than 30 minutes without needing a break, and stand for 15 minutes before needing a break, and that she could sit and stand for less than two hours in an eight-hour day. He concluded that she could "never" lift less than 10 pounds, twist, squat or climb ladders, and could "rarely" stoop and climb stairs. He believed she would be significantly off task during a work day (25% or more) and would be absent more than four days per month. He confirmed that his assessment was "reasonably consistent" with "signs, clinical findings and laboratory or test results." Tr. 558-61 (2015 evaluation); Tr. 1066-71 (2016 evaluation).

Plaintiff also presented to Dr. Leslie Helprin for a consultative psychiatric evaluation. Dr. Helprin administered a cognitive exam and concluded that her cognitive functioning was "deficient." Dr. Helprin concluded that Plaintiff had (i) no limitations in her ability to understand

simple directions and instructions and learn new simple tasks; (ii) moderate limitations in her ability to perform simple and complex tasks independently due to cognitive limitations; and (iii) marked limitations in her ability to maintain a regular schedule, make appropriate decisions, relate adequately with others and deal appropriately with stress. Dr. Helprin concluded that "the results of the examination appear to be consistent with psychiatric and cognitive problems, and this may significantly interfere with the claimant's ability to function on a daily basis." She further concluded that Plaintiff would not be able to manage her own funds "due to cognitive limitations." She recommended that Plaintiff continue "psychiatric and psychological" treatment "to determine if her medical conditions preclude her from working over the long term." Tr. 534-38.

Plaintiff presented to Dr. Gilbert Jenouri for a consultative physical examination. Dr. Jenouri diagnosed low back pain and right knee pain. He concluded that Plaintiff had "mild restriction to walking standing, and sitting long periods, bending, stair climbing, lifting, and carrying." Tr. 544-47.

## II. Legal Standard

An ALJ's determination may be set aside only "if it is based upon legal error or not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion" and is "more than a mere scintilla." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995).

Because Plaintiff's application was filed before March 2017, the decision of the ALJ must comply with the Treating Physician Rule. Under the Treating Physician Rule, "[t]he ALJ

4

[is] required either to give [the treating physician's] opinions controlling weight or to provide good reasons for discounting them." Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (citing 20 C.F.R. § 404.1527([c])(2) ). Indeed, 20 C.F.R. § 416.927 (c)(2) provides that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." When the ALJ fails to provide a good reason for not giving the treating physician's opinion "controlling weight," remand is required unless adherence to the rule could have only led to the same conclusion. Zabala, 595 F.3d at 409. See also Urena v. Comm'r of Soc. Sec., 379 F. Supp. 3d 271, 280 (S.D.N.Y. 2019). "[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." Byam v. Barnhart, 336 F.3d 172, 183 (2d Cir. 2003) (internal quotation marks omitted).

To determine the appropriate weight to give a treating source's opinion, the ALJ should consider factors set forth in the regulations, which include: (i) the length of the treatment relationship and the frequency of the examination; (ii) the nature and extent of the treatment relationship; (iii) the supportability of the opinion with relevant evidence, particularly medical signs and laboratory findings; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other relevant factors. See 20 C.F.R. § 416.927(c)(1)-(6)

### III. Analysis

The ALJ assigned "very little weight" to the opinion of Plaintiff's longtime treating primary care doctor, Dr. Gapay. In so doing, the ALJ violated the Treating Physician Rule.

First, the SSA regulations and rules require the ALJ to consider various factors before discounting a treating physician's opinion. Dr. Gapay has been Plaintiff's primary care physician

since 2009, and she saw him for treatment every two to five months. See Tr. 89-90, Pl's Br. 4. In setting aside Dr. Gapay's opinion, the ALJ did not discuss the required factors including length of Dr. Gapay's treatment relationship with Plaintiff, the frequency of the examination, or Dr. Gapay's area of expertise. The failure to discuss the regulations' factors is, itself, grounds for remand. Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999) (failure to provide "good reasons" is grounds for remand).

Second, the primary reason the ALJ afforded "very little weight" to Dr. Gapay's opinion was his response to the ALJ's January 31, 2017 letter. See Tr. 29, 1214-17. The ALJ had asked the doctor if he had "any specific particular expertise or training . . . in evaluating impairment or functional limitation. . . ." Tr. 1214-17. The doctor answered that he had "no training" in this area. He stated that his opinion was derived from his medical evaluation, the patient's responses to treatment and the records from other treating providers, including a 2011 functional report. When asked whether he evaluated the "physical movements and activities" one would need to do to perform a job, he responded that he did a *medical* evaluation, not a *functional* evaluation, including that he did not ask her to lift a particular weight. He also mentioned that the last functional evaluation was completed in 2011.

The ALJ concluded that the fact that the Plaintiff's primary care doctor did not perform a functional capacity evaluation "undermines his opinions." Tr. 29. But nothing in the SSA regulations or the body of law developed regarding the Treating Physician Rule requires a doctor to be trained to evaluate an individual's capacity to perform work activities. A medical doctor is permitted to offer his medical opinion based on his evaluation and the record evidence. If substantial evidence does not support that opinion, that is one thing; but the ALJ is not permitted to ignore a medical opinion because the provider is not trained in the specialized trade of

workplace capacity. Moreover, the ALJ wrongly concluded that Dr. Gapay's opinion was "not based on substantial evidence, but rather on a 2011 functional assessment." While the ALJ stated that Dr. Gapay had "based his functional limitations on a report that was generated over two years prior to the alleged onset date," Dr. Gapay's letter indicates that his opinion was also based on his medical evaluation of Plaintiff, his assessment of her response to treatment and other medical providers' records. Tr. 1214. There is no basis to conclude that Dr. Gapay's opinion rests solely on an outdated report.

Finally, Dr. Gapay noted in his response to the ALJ's letter that he usually referred claimants to technicians trained to perform functional limitation reports. See id. The ALJ has an affirmative duty to develop the record and "cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Rosa v. Callahan, 160 F.3d 72, 79 (2d Cir. 1999). To the extent that the ALJ considered a functional report by a specially trained person to be necessary to his decision, the ALJ should have requested a referral or, at a minimum, awaited the results from Dr. Gapay's referral. See 42 U.S.C. § 423(d)(5)(B) ("[T]he Commissioner . . . shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis."); Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 505 (S.D.N.Y. 2014).

The ALJ failed to provide good reason to deny controlling weight to Dr. Gapay's opinion and relied on improper grounds to afford it very little weight. Accordingly, remand to the ALJ is required. See Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

### IV. Conclusion

The Commissioner's motion for judgment on the pleadings is DENIED and plaintiff's motion is GRANTED. The matter is remanded to the Commissioner for further administrative proceedings consistent with this order. The Clerk of Court is respectfully requested to terminate the motions at ECF No. 25 & 29, remand this action to the Social Security Administration and close this case.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   June 1, 2020
         New York, New York